UNITED STATES of America,
Plaintiff–Appellee,

v.

Monico Santolo TREJO, Defendant–
Appellant.

No. 00–50244.

D.C. No. CR–98–00037–RT–2.

United States Court of Appeals,
Ninth Circuit.

Submitted June 5, 2001.*

Decided June 27, 2001.

Before TROTT, TASHIMA, and W.
FLETCHER, Circuit Judges.

MEMORANDUM **

Defendant–Appellant Monico Santolo
Trejo ("Trejo") pled guilty to possession of
methamphetamine with the intent to dis-

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

tribute in violation of 21 U.S.C. § 841(a)(1). At sentencing, Trejo sought downward adjustments under the safety valve and acceptance of responsibility provisions of the Federal Sentencing Guidelines. *See* 18 U.S.C. § 3553(f); U.S.S.G. §§ 5C1.2, 3E1.1. The district court denied those downward adjustments and imposed an upward adjustment for obstruction of justice. *See* U.S.S.G. § 3C1.1.

Trejo timely appealed his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we AFFIRM.

## DISCUSSION

We review for clear error the district court's decision to deny reductions under the safety valve exception and for acceptance of responsibility. *United States v. Fleming*, 215 F.3d 930, 939 (9th Cir.2000); *United States v. Ajugwo*, 82 F.3d 925, 929 (9th Cir.1996). We also review for clear error the district court's decision to impose an upward adjustment for obstruction of justice. *United States v. Pascucci*, 943 F.2d 1032, 1037 (9th Cir.1991). As discussed below, we conclude that each of the district court's sentencing determinations is amply supported by the record and is not erroneous.

Because the parties are familiar with the facts of this case, we recount them here only where necessary to explain our decision.

A. Safety Valve Downward Adjustment

■ To be eligible for the safety valve exception, Trejo had to demonstrate to the district court that he was fully truthful, honest, and forthcoming during his proffer session with the United States. *See* 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(5); *Ajugwo*, 82 F.3d at 929; *United States v. Sherpa*, 110 F.3d 656, 660 (9th Cir.1996); *United States v. Shrestha*, 86 F.3d 935, 939 (9th Cir.1996). The district court was on a

firm foundation when it concluded that that Trejo was not truthful and complete during his proffer session.

For example, at his proffer session, Trejo stated that "he was told [by Alejandro] to go with de la Vara Puente to California to a meat market." At his sentencing hearing, however, Trejo admitted that he was the one who recruited de la Vara Puente into the drug transportation scheme. Furthermore, according to the declaration of the DEA Agent who interviewed Trejo, Trejo provided only the barest of details, and when pressed about full names, physical descriptions, and the like, "[Trejo] said that he could not remember any other details about these events."

We find unpersuasive Trejo's alternative contention that he was not given a "full opportunity" to provide information at the proffer session because the government did not utilize a court-certified interpreter, and instead used a Spanish-speaking DEA Agent to translate over the telephone. As the district court observed, Trejo acknowledged that neither he nor his defense attorney indicated during the proffer session that either was having trouble understanding the DEA interpreter. Moreover, Trejo did not mention his professed difficulty comprehending the translation or seek a second proffer session until seven months later when the government provided him with a copy of the incriminating letter he falsely denied writing.

B. Obstruction of Justice Upward Adjustment

■ "Obstructive conduct can vary widely in nature, degree of planning, and seriousness," and includes, but is not limited to "(a) threatening, intimidating, or unlawfully influencing a co-defendant, witness, or juror, directly or indirectly, or attempting to do so; [and] (b) committing,

suborning, or attempting to suborn perjury." U.S.S.G. § 3C1.1, cmts. 3, 4.

Trejo wrote a letter to his co-defendant, de la Vara Puente, which stated:

See, I have a chance of getting out if you help me, like we had agreed, that you say that I did not know anything, and if they say that I knew, you can tell them that if I found out about it, it was because you told me, and that way I can get out earlier. And once out, I'll get you a lawyer right away so that you can also get out. Look, what I am telling you is, it's not that I am trying to act dumb with you, it's just that we don't have any other chance. See, if it turns out the way I am telling you, I'll get you a lawyer right away, but we both have to pull the same way... Look, do what I am telling you to and you will see that we will get out of here soon.

The district court did not err, let alone clearly err, in determining that Trejo's letter was an attempt to convince a co-defendant to help him by concocting a story to tell authorities in an attempt to escape punishment. *See United States v. Hopper*, 27 F.3d 378, 382 (9th Cir.1994) (concluding that defendant's attempt to "buy false alibis" constituted obstruction of justice); *United States v. Atkinson*, 966 F.2d 1270, 1277 (9th Cir.1992). The district court did not err when it adjusted upward on the basis of Trejo's obstruction of justice.

C. Acceptance of Responsibility Downward Adjustment

In determining whether a defendant is entitled to a downward adjustment for acceptance of responsibility, courts should consider, among other things, whether the defendant (1) pled guilty before trial; (2) truthfully admitted to all the elements of the offense; and (3) truthfully admitted, or at least did not falsely deny, other relevant conduct. *See* U.S.S.G. § 3E1.1(a); *United*

*States v. Fellows*, 157 F.3d 1197, 1202 (9th Cir.1998).

■ Here, there is no dispute that Trejo pled guilty before trial. However, there is more than adequate support in the record for the district court's conclusion that Trejo provided inconsistent stories throughout the entire process, up to and including his sentencing hearing. In his plea agreement, for example, Trejo admitted that he knew there were drugs in the truck and that he was supposed to be paid for delivering them. However, Trejo told the probation officer that he did not know about the drugs in the truck until later in the journey and that he was not getting paid for delivering the drugs. Then, at his proffer session, Trejo admitted that he knew about the drugs, but made no mention of payment. Finally, at his sentencing hearing, Trejo reverted to the story reflected in the plea agreement, admitting that he knew about the drugs and that he had been paid for delivering them.

Trejo also told inconsistent and incredible stories with respect to the letter he wrote to de la Vara Puente. At his proffer session, Trejo denied writing the letter, or even knowing about its existence. At the sentencing hearing, however, after the government provided defense counsel with a copy of the letter, Trejo fessed up to writing the letter, but implausibly claimed that he wrote the letter at the request of de la Vara Puente who wanted Trejo to memorialize their purported "agreement."

The district court did not err in denying Trejo a downward adjustment for acceptance of responsibility even though he pled guilty prior to trial. *See United States v. Smith*, 905 F.2d 1296, 1301 (9th Cir.1990) (upholding court's denial of downward adjustment for acceptance of responsibility because defendant's stories were inconsistent, and defendant attempted to minimize his own involvement), *overruled by statute*

*on other grounds as recognized in United States v. Burnett,* 16 F.3d 358, 360 n. 1 (9th Cir.1994).

AFFIRMED.

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Cir. R. 36–3.